1    *Counsel listed on second page*

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   ALESSANDRO DIRIENZO, on behalf of      CASE No. **09 cv 2745 DMS JMA**
     himself, and on behalf of all persons   (Class Action)
12   similarly situated,
                                              **MEMORANDUM OF POINTS AND**
13                  Plaintiffs,               **AUTHORITIES IN SUPPORT OF JOINT**
                                              **MOTION FOR PRELIMINARY**
14   vs.                                      **APPROVAL OF CLASS SETTLEMENT**

15   DUNBAR ARMORED, INC., a Maryland        Assigned to: Judge Dana M. Sabraw
     Corporation,                            Referred to: Magistrate Judge Jan M. Adler
16                                           *Dirienzo* Complaint Filed: December 8, 2009
                    Defendant.

17   ───────────────────────────────
     *Consolidated with:*
18
     ANTHONY ROGERS, on behalf of himself    CASE NO. 10CV1931 DMS (BGS)
19   and all others similarly situated,

20                  Plaintiff,

21   v.
     DUNBAR ARMORED, INC., a Maryland
22   corporation, and DOES 1 through 100,    *Rogers* Complaint Filed:    October 17, 2009
     inclusive,
23
                    Defendants.

24

25

26

27

28

1 | Timothy D. Cohelan, Esq. (SBN 60827)
Isam C. Khoury, Esq. (SBN 58759)
2 | Michael D. Singer, Esq. (SBN 115301)
Jeff Geraci, Esq. (SBN 151519)
3 | **COHELAN KHOURY & SINGER**
605 "C" Street, Suite 200
4 | San Diego, CA 92101-5305
Telephone:      (619) 595-3001
5 | Facsimile:      (619) 595-3000

6 | Attorneys for Plaintiff ANTHONY ROGERS
on behalf of himself and all others similarly situated

7 |

8 | **BLUMENTHAL, NORDREHAUG & BHOWMIK**
Norman B. Blumenthal, Esq. (SBN 068687)
    Email: norm@bamlawlj.com
9 | Kyle R. Nordrehaug, Esq. (SBN 205975)
    Email: kyle@bamlawlj.com
10 | Aparajit Bhowmik, Esq. (SBN 248066)
    Email: aj@bamlawlj.com
11 | 2255 Calle Clara
La Jolla, CA 92037
12 | Telephone:  (858) 551-1223
Facsimile:  (858) 551-1232

13 |

14 | Attorneys for Plaintiff ALESSANDRO DIRIENZO
on behalf of himself and all others similarly situated

15 |

16 | Paul F. Sorrentino (SBN: 126348)
Jennifer L. Santa Maria (SBN: 225875)
17 | **JACKSON LEWIS LLP**
655 West Broadway, Suite 900
18 | San Diego, CA 92101
Tel: (619) 573-4900
19 | Fax: (619) 573-4901
sorrentp@jacksonlewis.com
santamariaj@jacksonlewis.com

20 |

21 | Attorneys for Defendant DUNBAR ARMORED, INC.

22 |

23 |

24 |

25 |

26 |

27 |

28 |

## **TABLE OF CONTENTS**

I.    INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   DESCRIPTION OF THE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  NATURE OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   PLAN OF ALLOCATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.    THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR
      PRELIMINARY APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    The Role Of The Court In Preliminary Approval of a
            Class Action Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.    Factors To Be Considered In Granting Preliminary Approval  . . . . . . . . . . . 10

            1.    The Settlement Is the Product of Serious, Informed and
                  Noncollusive Negotiations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            2.    The Settlement Has No "Obvious Deficiencies" and Falls Within
                  the Range for Approval  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            3.    The Settlement Does Not Improperly Grant Preferential Treatment
                  To Class Representatives or Segments Of The Class . . . . . . . . . . . . . 14

            4.    The Stage Of The Proceedings Are Sufficiently Advanced To
                  Permit Preliminary Approval Of These Settlements  . . . . . . . . . . . . . 15

VI.   THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES  . . . 16

      A.    Rule 23 of the Federal Rules of Civil Procedure Governs  . . . . . . . . . . . . . 17

      B.    The Numerosity Requirement Is Satisfied . . . . . . . . . . . . . . . . . . . . . . . . . 17

      C.    Common Questions of Law and Fact Bind the Class  . . . . . . . . . . . . . . . . . 18

      D.    The Claim of the Plaintiffs Are Typical of the Class Claims  . . . . . . . . . . . 19

      E.    The Class Representatives Have Fairly and Adequately Protected
            the Interests of the Class  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      F.    For the Class As Alleged in the First Amended Complaint, The
            Additional Requirements of Rule 23 Are Satisfied . . . . . . . . . . . . . . . . . . . 20

VII.  THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE . . . . . . . . 22

VIII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

**Cases**:

Ali v. U.S.A. Cab, Ltd.,
    176 Cal. App. 4th 1333 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Ansari v. New York Univ.,
    179 F.R.D. 112 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Armstrong v. Board of School Directors,
    616 F.2d 305 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Buchholtz v. Swift & Co.,
    62 F.R.D. 581 (D.Minn. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Consolidated Rail Corp. v. Town of Hyde Park,
    47 F.3d 473 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Detroit v. Grinnell Corp.,
    495 F.2d 448 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Donaldson v. Pillsbury Co.,
    554 F.2d 825 (8th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

EEOC v. Kovacevich "5" Farms,
    2007 U.S. Dist. LEXIS 32330 (E.D.Cal. April 18, 2007) . . . . . . . . . . . . . . . . . . . . 18

Estrada v. FedEx Ground Package System, Inc.,
    154 Cal.App.4th 1 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fisher Bros. v. Cambridge-Lee Indus., Inc.,
    630 F. Supp. 482 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Gautreaux v. Pierce,
    690 F.2d 616 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ghazaryan v. Diva Limousine, Ltd.,
    169 Cal. App. 4th 1524 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Glass v. UBS Fin. Servs.,
    2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007) . . . . . . . . . . . . . . . 13-17

Hanlon v. Chrysler Co.,
    150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 20

In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,
    55 F.3d 768 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Jiffy Lube Sec. Litig.,
    927 F.2d 155 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Wash. Public Power Supply System Sec. Litig.,
    720 F. Supp. 1379 (D. Ariz. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Wirebound Boxes Antitrust Lit.,
128 F.R.D. 268 (D. Minn. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

In re Workers' Compensation,
130 F.R.D. 99 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 23

Jenkins v. Raymark Ind., Inc.,
782 F.2d 468 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Jenson v. Continental Fin. Corp.,
404 F. Supp. 806 (D. Minn. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Jordan v. County of Los Angeles,
669 F.2d 1311 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Kirkorian v. Borelli,
695 F. Supp. 446 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Krzesniak v. Cendant Corp.,
2007 U.S. Dist. LEXIS 47518 (N.D. Cal. June 20, 2007) . . . . . . . . . . . . . . . . . . . 23

Lockwood Motors, Inc. v. General Motors Corp.,
162 F.R.D. 569 (D. Minn. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 22

Louie v. Kaiser Found. Health Plan, Inc.,
2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Lyons v. Marrud, Inc.,
[1972-1973 Transfer Binder] Fed. Sec. L. Rep.
(CCH) Paragraph 93,525 (S.D.N.Y. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Mercury Interactive Corp. Secs. Litig. v. Mercury Interactive Corp.,
618 F.3d 988 (9th Cir 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Officers for Justice v. Civil Serv. Comm'n,
688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,
323 F. Supp. 364 (E.D. Pa. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Prince v. CLS Transportation, Inc.,
118 Cal.App.4th 1320 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,
390 U.S. 414 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Reed v. General Motors Corp.,
703 F.2d 170 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Slaven v. BP Am., Inc.,
190 F.R.D. 649 (C.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Staton v. Boeing,
327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 20

Tate v. Weyerhaeuser Co.,
    723 F.2d 598 (8th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Valentino v. Carter-Wallace, Inc.,
    97 F.3d 1227, 1234 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Weinberger v. Kendrick,
    698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

White v. Local 942,
    688 F.2d 85 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**Statutes:**

Cal. Business and Professions Code §17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Cal. Labor Code §201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Cal. Labor Code §203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Cal. Labor Code §221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Cal. Labor Code §226.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Cal. Labor Code §512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Cal. Labor Code §2699 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 20

Cal. Labor Code §2802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed. Rules Civ. Proc., rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Secondary Authorities:**

2 H. Newberg & A. Conte, Newberg on Class Actions (3d ed. 1992) . . . . . . . . . 8, 9, 22, 25

Manual for Complex Litigation, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 25

3B J. Moore, Moore's Federal Practice §§23.80 - 23.85 (2003) . . . . . . . . . . . . . . . . . . . 9

Plaintiffs Alessandro Dirienzo and Anthony Rogers ("Representative Plaintiffs") Defendant Dunbar Armored, Inc. ("Dunbar" or "Defendant") respectfully submit this memorandum of points and authorities in support of the joint motion for preliminary approval of settlement of this class action.

## I.   INTRODUCTION

Representative Plaintiffs and Defendant have reached a full and final settlement of the above-captioned Consolidated Class Action, which is embodied in the Joint Stipulation of Settlement and Release ("Stipulation of Settlement") filed concurrently with the Court.[1] By this motion, Representative Plaintiffs and Defendant seek preliminary approval from the Court of the Stipulation of Settlement (a copy of which is attached as Exhibit 1 to the Declaration of Norman Blumenthal, served and filed herewith), conditional certification of the Settlement Class, approval of the Preliminary Approval Order, and scheduling of the Settlement Fairness Hearing to determine final approval of the Settlement.

## II.   DESCRIPTION OF THE SETTLEMENT

Counsel for the Parties, after litigation and settlement negotiations, agreed to a settlement that is fair, reasonable and favorable to the Class, which includes all current and former employees employed by Defendant as a driver/guard and/or crew chief or similar job title in California between September 26, 2006 through December 31, 2010. (Stipulation of Settlement at ¶6.)

On July 9, 2010, the parties in the Rogers and Dirienzo Class Actions participated in private mediation with Mark Rudy, Esq., a respected attorney and an experienced mediator of wage and hour class actions. Declaration of Norman Blumenthal, ("Decl. Blumenthal") ¶5. As a result of the all day mediation, the parties reached a settlement that they believe to be fair and reasonable in light of the experience of the Parties' attorneys as counsel in other wage and hour

---

[1]   Capitalized terms in this Memorandum have the same meaning as contained in the Joint Stipulation of Settlement and Release.

1  cases, and the uncertainties and cost of the years of litigation the Parties faced if the settlement

2  was not reached.  Decl. Blumenthal, ¶5.

3      Under the terms to which the Parties have agreed, Defendant agrees to establish a

4  Settlement Fund of One Million Five Hundred Thousand Dollars and Zero Cents

5  ($1,500,000.00) on a nonsegregated and claims-made basis, with a guaranteed minimum 50%

6  of the Net Settlement Fund, as defined below, to be paid to Class Members; under no condition

7  will Defendant's liability exceed the Gross Settlement Fund, except to the extent employer

8  payroll taxes (FICA, FUTA, etc.) based on valid claims submitted by the Class Members cannot

9  be paid by the Net Settlement Amount.  Decl. Blumenthal, ¶3.  This sum is inclusive of all

10 claims of the Class members, as well as Class Counsel's attorneys' fees and costs, service

11 payment for the Class Representative, PAGA payment to the State of California, the cost of

12 class notice and claims administration, and the employer's share of FICA, FUTA and any other

13 payroll taxes on the amounts actually paid to Class Members.  It is understood and agreed that

14 Defendant's maximum total liability shall not exceed the Gross Settlement Fund, except to the

15 extent employer payroll taxes (FICA, FUTA, etc.) based on valid claims submitted by the Class

16 Members cannot be paid by the Net Settlement Amount.

17     Per Paragraph 17(a) of the Stipulation of Settlement, Defendant will transfer the Gross

18 Settlement Fund to the Claims Administrator within fourteen (14) calendar days from the

19 Effective Date.  The Stipulation of Settlement provides for a claims process to make payments

20 on each timely and valid claim submitted based upon the allocation formula set forth in the

21 Stipulation of Settlement.  Decl. Blumenthal, ¶4.

22     This is a fair result for the members of the Settlement Class.  Liability in this case was

23 uncertain because some or all of the Class Members may not be entitled to the wages claimed

24 or reimbursement of expenses.  Further, Dunbar asserted substantial legal and factual defenses,

25 specifically, Defendant contended that it has complied at all times with the California Labor

26 Code, the California Code of Regulations, including applicable Wage Order, the California

27 Business and Professions Code and the Fair Labor Standards Act, and that it paid the

28 Representative Plaintiffs and Settlement Class Members all wages and other payments owing

1    to them under applicable law.  Decl. Blumenthal, ¶ 6.  These defenses could have reduced the

2    amount recovered or denied a recovery altogether to the members of the class.    Decl.

3    Blumenthal, ¶ 6.

4

5    **III.    NATURE OF THE CASE**

6            On December 8, 2009, Plaintiff Dirienzo, a former driver/guard for Defendant, filed a

7    wage and hour putative class action in this Court entitled, Dirienzo v. Dunbar Armored, Inc.,

8    Case No. 09 CV 2745 DMS (JMA), on behalf of a class of current and former employees of

9    Defendant ("Dirienzo Class Action").  A First Amended Complaint ("FAC") was filed February

10   18, 2010 to include a claim for violation of the Private Attorney General Act, Labor Code

11   section 2699 et seq. ("PAGA") as a sixth cause of action. The Dirienzo Class Action alleges

12   Defendant did not indemnify the members of the putative class for business expenses, failed to

13   provide the legally required meal and rest breaks, failed to pay all wages due at employment

14   termination, and improperly denied benefits and breached fiduciary obligations as plan

15   administrator. The ERISA claim (the fifth cause of action) was dismissed by this Court on May

16   12, 2010. The operative Complaint sought recovery of compensatory damages, penalties,

17   interest, attorneys' fees and costs, declaratory relief and injunctive relief. Defendant answered

18   the operative Complaint and denied all allegations in their entirety and asserted appropriate

19   affirmative defenses.  Decl. Blumenthal, ¶7.

20           On October 17, 2009, Plaintiff Rogers, a former driver/guard for Defendant, filed a wage

21   and hour putative class action in the Los Angeles County Superior Court entitled Rogers v.

22   Dunbar Armored, Inc., LASC Case No. BC424751, on behalf of a class of current and former

23   employees of Defendant ("Rogers Class Action"). The Rogers Class Action similarly asserts

24   wage and hour violations on behalf of a class of current and former employees of Defendant of

25   failure to reimburse business expenses, failure to provide the legally required meal periods and

26   rest periods, failure to pay all wages when terminated, unfair business practices and statutory

27   penalties. Plaintiff Rogers' Complaint also sought recovery of compensatory damages,

28   penalties, interest, attorneys' fees and costs, declaratory relief and injunctive relief. Defendant

1   answered the operative Complaint and denied all allegations in their entirety and asserted

2   appropriate affirmative defenses.  Decl. Blumenthal, ¶8.

3        On May 19, 2010 and August 20, 2010, Defendant filed notices of related cases in the

4   Dirienzo and Rogers Class Actions, respectively, thereby designating the two actions related.

5   On July 9, 2010, the parties in the Rogers and Dirienzo Class Actions participated in private

6   mediation with Mark Rudy, Esq. A settlement was reached which resolves wage and hour

7   claims in both cases, subject to Court approval.  Decl. Blumenthal, ¶9.

8        On August 6, 2010 Defendant removed the Rogers Class Action from state court to

9   federal district court the Central District of California on the grounds of diversity jurisdiction

10  in that the Rogers Class Action met the elements of a class action under the Class Action

11  Fairness Act ("CAFA"). The Rogers Class Action was assigned Case No. CV10 5861

12  GAF(MANx), and assigned to federal district court Judge Feess. On or about September 9,

13  2010, Plaintiff Rogers and Defendant moved jointly to request the district court to transfer the

14  case to the Southern District, which was granted on September 14, 2010. On September 27,

15  2010, the parties stipulated and moved jointly to consolidate the cases before this Court and

16  Judge Dana Sabraw in the interests of justice by conserving judicial resources and preventing

17  duplicate or inconsistent rulings relating to settlement approval. On September 28, 2010, the

18  Court consolidated the Dirienzo and Rogers Class Actions ("Consolidated Class Action").

19  Decl. Blumenthal, ¶10.

20       Although a settlement has been reached, Dunbar denies that it or any of its parents,

21  subsidiaries, affiliates or successors or any other releasee has engaged in any unlawful activity,

22  has failed to comply with the law in any respect, or has any liability to anyone under the claims

23  asserted in the Consolidated Class Action.  Decl. Blumenthal, ¶11.

24       Representative Plaintiffs contend that Dunbar violated California and federal wage and

25  hour laws and that the Class Action is appropriate for class certification and collective

26  certification on the basis that the Representative Plaintiffs' claims meet the requisites for class

27  certification.  Without admitting that class certification is proper, Dunbar has stipulated that the

28  above Settlement Class of employees in California may be certified for settlement purposes

1    only.  (Stipulation of Settlement at ¶ 6.)  The Parties agree that certification for settlement

2    purposes is not an admission that class certification would be proper if the class certification

3    issue were litigated.  Further, this agreement is not admissible in this or any other proceeding

4    as evidence that the Class could be certified absent a settlement.  Solely for purposes of settling

5    the lawsuits, the Parties stipulate and agree that the requisites for establishing class certification

6    with respect to the Class, as defined above, have been met and are met.  Decl. Blumenthal ¶ 12.

7         Class Counsel has conducted a thorough investigation into the facts of the class action.

8    Class Counsel has diligently evaluated the Class Members' claims against Dunbar.  Prior to the

9    Parties executing a "Memorandum of Understanding," counsel for Dunbar provided Class

10   Counsel with access to information concerning Dunbar's employment policies and practices and

11   Class Member data, including data reflecting the weeks worked by the Class Members and

12   relevant salary information for the positions at issue.  Based on the foregoing data and their own

13   independent investigation and evaluation, Class Counsel believes that the settlement with

14   Dunbar for the consideration and on the terms set forth in this Stipulation of Settlement is fair,

15   reasonable, and adequate and is in the best interest of the Class in light of all known facts and

16   circumstances, including the risk of significant delay, the likelihood that Dunbar would prevail

17   on its defenses, and numerous potential appellate issues.  Decl. Blumenthal at ¶13.  Dunbar and

18   Dunbar's counsel also agree that the Settlement is fair and in the best interest of the Class.

19

20   **IV.   PLAN OF ALLOCATION**

21         To implement the terms of this Settlement, Defendant agrees to establish a Settlement

22   Fund of One Million Five Hundred Thousand Dollars and Zero Cents ($1,500,000.00) on a

23   nonsegregated and claims-made basis, with a guaranteed minimum 50% of the Net Settlement

24   Fund, as defined below, to be paid to Class Members; under no condition will Defendant's

25   liability exceed the Gross Settlement Fund, except to the extent employer payroll taxes (FICA,

26   FUTA, etc.) based on valid claims submitted by the Class Members cannot be paid by the Net

27   Settlement Amount, as discussed below.  (Stipulation of Settlement at ¶17(a).)  All valid and

28   timely claims submitted by Class Members, and all attorneys' fees, costs, enhancement awards

1  to the Class Representative, fees and expenses of the Claims Administrator and any other

2  payments including but not limited to all payroll taxes and required employer contributions

3  (including but not limited to FICA and FUTA), provided by this Settlement shall be paid out

4  of this Gross Settlement Fund.  (Id.)  Decl. Blumenthal at ¶14.

5      The "Net Settlement Fund" is defined as that amount remaining following

6  Court-approved deductions from the Gross Settlement Fund, for attorneys' fees (not to exceed

7  Five Hundred Thousand Dollars ($500,000.00) and costs (not to exceed Twenty Five Thousand

8  Dollars ($25,000)), the PAGA payment to the State of California in the amount of $18,750, the

9  enhancement awards to the Class Representatives (individually not to exceed Five Thousand

10 Dollars ($5,000.00)), and the fees and expenses of the Claims Administrator, estimated not to

11 exceed Twenty-Five Thousand Dollars ($25,000). Settlement awards to the Class Members who

12 file valid and timely claims will be calculated by the Claims Administrator and paid out of the

13 Net Settlement Fund as set forth below. (Stipulation of Settlement at ¶17(b).) Decl. Blumenthal

14 at ¶15.

15      The Settlement provides for a claims process requiring Defendant to pay settlement

16 awards according to a specified formula on each timely and valid claim submitted.  Settlement

17 awards to Class Members will be determined on a workweek basis and the amount to be paid

18 per workweek shall be calculated by dividing the total number of workweeks worked by all of

19 the respective Class Members during the Class Period into the Net Settlement Fund pursuant

20 to the settlement allocation described below to yield the estimated minimum payment to be paid

21 to the Class Members for each workweek. The number of workweeks worked by Class

22 Members during the respective Class Period will be determined by reference to Defendant's

23 records.  (Stipulation of Settlement at ¶17(c).)   The Net Settlement Fund will be available to

24 pay all valid and timely claims submitted by Class Members, to settle the claims of failure to

25 provide meal and rest breaks, failure to reimburse alleged business expenses, or alleged

26 improper deductions, and any other claims that were or could have been brought by Plaintiffs

27 based upon the alleged facts in the operative Complaints for these Actions.  (Id.) The Claims

28 Administrator will calculate the number of workweeks worked by the Class Members during

1  the Class Period, the amount to be paid per workweek, and the individual settlement awards to

2  those Class Members who submit valid and timely Claim Forms ("Participating Class

3  Members").  (Id.)  The workweeks will be calculated by the Claims Administrator for each

4  Class Member by dividing the total days worked as a Class Member during the Class Period by

5  five. Partial workweeks will be counted. Defendant's workweek data will be presumed to be

6  correct, unless a particular Class Member proves otherwise to the Claims Administrator by

7  credible evidence. All workweek disputes will be resolved and decided by the Claims

8  Administrator. (Id.) Decl. Blumenthal at ¶16.

9      The individual settlement awards will be determined by dividing the total number of

10  workweeks for the entire Class by the Net Settlement Fund, resulting in the Workweek Value;

11  and then multiplying the Workweek Value by the number of workweeks worked by each Class

12  Member during the Class Period (The "Individual Settlement Award.") (Stipulation of

13  Settlement at ¶17(c)(i).  In the event that less than fifty (50) percent of the Net Settlement Fund

14  is claimed by Participating Class Members, Defendant has guaranteed payment of fifty (50)

15  percent of the Net Settlement Fund to be paid to the Participating Class Members on a

16  proportional basis, on the number of work weeks he or she worked during the Class Period in

17  relation to the number of weeks worked by all Participating Class Members during the Class

18  Period. (Id.) For each Participating Class Member who submits a timely and valid claim form,

19  the Claims Administrator mail to the address on file with the Claims Administrator, his or her

20  Individual Settlement Award.  (Id.)  Decl. Blumenthal at ¶17.

21      The Individual Settlement Awards payable to Participating Class Members will be

22  allocated as follows: 1/4 to alleged unpaid wages; 1/4 to alleged unreimbursed business

23  expenses; 1/4 to alleged unpaid interest; and 1/4 to alleged unpaid civil and statutory penalties.

24  The appropriate W-2 and/or Form 1099 will be issued by the Claims Administrator for each

25  such payment or appropriate portion of such payment. (Stipulation of Settlement at ¶17(c)(i).)

26  Decl. Blumenthal at ¶17.

27      Subject to Court approval and/or modification, Defendant further agrees to pay Class

28  Counsel attorneys' fees up to the total sum of Five Hundred Thousand Dollars ($500,000.00)

and costs up to the total sum of Twenty Five Thousand Dollars ($25,000.00). (Stipulation of Settlement at ¶26.)  Defendant will not object to Class Counsel's application for attorneys' fees and costs up to these amounts. (Id.)  The amounts set forth above will cover all work performed and all fees and costs incurred to date, and all work to be performed and all fees and costs to be incurred in connection with the approval by the Court of this Stipulation of Settlement, the administration of the Settlement, and obtaining a judgment in favor of the Class for purposes of settlement, dismissal with prejudice of this Consolidated Class Action.  (Id.)   Decl. Blumenthal at ¶18.

Subject to the Court's approval, the Claims Administrator will be Gilardi & Co LLC, or such other claims administrator as may be mutually agreeable to the parties. (Stipulation of Settlement at ¶20.)   The parties estimate the fees of the Claims Administrator will be Twenty-Five Thousand Dollars ($25,000.00). (Id.)  The fees of the Claims Administrator for work done shall be paid regardless of the outcome of this Settlement. In the event there is no final approval of the Settlement ordered by the Court, each party will pay 50% of the costs of administration, unless Defendant exercises its right to terminate the Settlement, then Defendant will be responsible for all costs of administration incurred.  (Id.)  Decl. Blumenthal at ¶19.

Subject to Court approval, Defendant further agrees to pay Plaintiffs an enhancement award for their service as a Class Representatives as follows: up to the maximum of Five Thousand Dollars ($5,000.00) each to Plaintiffs Rogers and Dirienzo.    (Stipulation of Settlement at ¶19.)  Defendant will not object to Class Counsel's application for Court approval of this enhancement award to Plaintiffs.  (Id.)  Decl. Blumenthal at ¶20.

As per Paragraph 17(b) of the Stipulation of Settlement, the Parties have agreed to designate $18,750 for payment to the State of California for the release of claims under the Private Attorneys General Act, pursuant to Labor Code section 2699, subdivision (I).  Decl. Blumenthal, ¶21.

## V.     THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR PRELIMINARY APPROVAL

When a proposed class-wide settlement is reached, the settlement  must be submitted to

the court for approval.  Fed. R. Civ. P. 23(e)(1)(A); 2 H. Newberg & A. Conte, <u>Newberg on Class Actions</u> (3d ed. 1992) at §11.41, p.11-87.  Preliminary approval is the first of three steps that comprise the approval procedure for settlements of class actions.  See e.g. <u>Louie v. Kaiser Found. Health Plan, Inc.</u>, 2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008).  The second step is the dissemination of notice of the settlement to all class members.  The third step is a final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented and class members may be heard regarding the settlement.  See <u>Manual for Complex Litigation</u>, Second §30.44 (1993).

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement is "within the range of possible approval." <u>Manual for Complex Litigation</u>, Second §30.44 at 229; <u>Gautreaux v. Pierce</u>, 690 F.2d 616, 621 n.3 (7th Cir. 1982); <u>Louie</u>, <u>supra</u>, at *7.  Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective Class for their acceptance or rejection."  <u>Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.</u>, 323 F. Supp. 364, 372 (E.D. Pa. 1970).  There is an initial presumption of fairness when a proposed settlement, which was negotiated at arm's length by Class Counsel, is presented for court approval.  <u>Newberg</u>, 3d Ed., §11.41, p.11-88.  However, the ultimate question of whether the proposed settlement is fair, reasonable and adequate is made after notice of the settlement is given to the class members and a final settlement hearing is held by the Court.

**A.      The Role Of The Court In Preliminary Approval Of A Class Action Settlement**

The approval of a proposed settlement of a class action suit is a matter within the broad discretion of the trial court.  <u>Staton v. Boeing</u>, 327 F.3d 938, 959 (9th Cir. 2003).  Preliminary approval does not require the trial court to answer the ultimate question of whether a proposed settlement is "fair, reasonable and adequate."  <u>In re Jiffy Lube Sec. Litig.</u>, 927 F.2d 155, 158 (4th Cir. 1991); <u>Manual for Complex Litigation</u>, Third, §§ 20.212.  That determination is made only after notice of the settlement has been given to the members of the class and after the class members have been given an opportunity to voice their views of the settlement or to be

1 excluded from the settlement Class.  See, e.g., 3B J. Moore, <u>Moore's Federal Practice</u> §§23.80

2 - 23.85 (2003).

3      In considering a potential settlement for preliminary approval purposes, the trial court

4 does not have to reach any ultimate conclusions on the issues of fact and law which underlie the

5 merits of the dispute (<u>Detroit v. Grinnell Corp.,</u> 495 F.2d 448, 456 (2d Cir. 1974)), and need not

6 engage in a trial on the merits.  <u>Officers for Justice v. Civil Serv. Comm'n</u>, 688 F.2d 615 (9th

7 Cir. 1982), cert. denied, 459 U.S. 1217 (1983).  The court is not required to determine that

8 certification of a settlement class is appropriate until the final settlement approval.  <u>In re General</u>

9 <u>Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.</u>, 55 F.3d 768, 797 (3d Cir. 1995).

10      The question of whether a proposed settlement is fair, reasonable and adequate

11 necessarily requires a judgment and evaluation by the attorneys for the parties based upon a

12 comparison of "the terms of the compromise with the likely rewards of litigation."  <u>Weinberger</u>

13 <u>v. Kendrick</u>, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied 464 U.S. 818 (1983) (quoting

14 <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S.

15 414, 424-25 (1968)).  Therefore, many courts recognize that the opinion of experienced counsel

16 supporting the settlement is entitled to considerable weight.  <u>Kirkorian v. Borelli</u>, 695 F. Supp.

17 446, 451 (N.D. Cal. 1988); <u>Reed v. General Motors Corp.,</u> 703 F.2d 170, 175 (5th Cir. 1983);

18 <u>Weinberger</u>, 698 F.2d at 74; <u>Armstrong v. Board of School Directors</u>, 616 F.2d 305, 325 (7th

19 Cir. 1980); <u>Fisher Bros. v. Cambridge-Lee Indus., Inc.,</u> 630 F. Supp. 482, 489 (E.D. Pa. 1985).

20 For example, in <u>Lyons v. Marrud, Inc.,</u> [1972-1973 Transfer Binder] Fed. Sec. L. Rep. (CCH)

21 Paragraph 93,525 (S.D.N.Y. 1972), the court noted that "[e]xperienced and competent counsel

22 have assessed these problems and the probability of success on the merits.  They have

23 concluded that compromise is well-advised and necessary.  The parties' decision regarding the

24 respective merits of their position has an important bearing on this case."  Id. at ¶ 92,520.

25 **B.    Factors To Be Considered In Granting Preliminary Approval**

26      A number of factors are to be considered in evaluating a settlement for purposes of

27 preliminary approval.  No one factor should be determinative, but rather all factors should be

28 considered.  These criteria have been summarized as follows:

If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement. Manual of Complex Litigation, Second §30.44, at 229.  Here, the settlement meets all of these criteria.

### 1.    The Settlement is the Product of Serious, Informed and Noncollusive Negotiations

This settlement is the result of extensive and hard fought negotiations.  Dunbar denies each and every one of the claims and contentions alleged in this Action.  Dunbar has asserted and continues to assert many defenses thereto, and has expressly denied and continues to deny any wrongdoing or legal liability arising out of the conduct alleged in the Action.  Nonetheless, Dunbar has concluded that this Action be settled in the manner and upon the terms and conditions set forth in the Stipulation of Settlement in order to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals.  Dunbar has decided to put to rest the Released Claims of the Settlement Class.

Settlement negotiations took place before Mark Rudy, a respected litigator and an experienced mediator of wage and hour class actions.  Counsel for the Parties, after settlement negotiations lasting the entire day, reached an agreement, based upon Mr. Rudy's expertise as a mediator and the uncertainties of protracted litigation.  Decl. Blumenthal,  ¶ 5.   Most importantly, Plaintiffs and Class Counsel believe that this settlement is fair, reasonable and adequate.  By reason of the settlement, Dunbar has agreed to establish a Settlement Fund of One Million Five Hundred Thousand Dollars and Zero Cents ($1,500,000.00) on a nonsegregated and claims-made basis, with a guaranteed minimum 50% of the Net Settlement Fund, as payment in full of all of the Class claims arising from the events described in the Consolidated Class Action, including Class Counsel's attorneys' fees  and expenses, PAGA payments, Class Representatives' service payment, and the cost of class notice and claims administration.

1  (Stipulation of Settlement at ¶ 17(a).)

2       Class Counsel has conducted a thorough investigation into the facts of the class action,

3  including an extensive review of relevant documents and data, and have diligently pursued an

4  investigation of the Settlement Class Members' claims against Dunbar. Decl. Blumenthal, ¶ 13.

5  Based on the foregoing documents and data and their own independent investigation and

6  evaluation, Class Counsel is of the opinion that the settlement with Dunbar for the consideration

7  and on the terms set forth in the Stipulation of Settlement is fair, reasonable, and adequate and

8  is in the best interest of the class in light of all known facts and circumstances, including the risk

9  of significant delay, defenses asserted by Dunbar, and numerous potential appellate issues.

10  Dunbar and Dunbar's counsel also agree that the Settlement is fair and in the best interest of the

11  Class Members.

12       Plaintiffs and Class Counsel recognize the expense and length of continuing to litigate

13  and trying this Class Action against Dunbar through possible appeals which could take several

14  years. Class Counsel has also taken into account the uncertain outcome and risk of litigation,

15  especially in complex actions such as this litigation. Class Counsel is also mindful of and

16  recognize the inherent problems of proof under, and alleged defenses to, the claims asserted in

17  the Class Action. Based upon their evaluation, Plaintiffs and Class Counsel has determined that

18  the settlement set forth in the Stipulation of Settlement is in the best interest of the Class

19  Members. Decl. Blumenthal, ¶22.

20       Here the negotiations have been hard-fought and aggressive with capable advocacy on

21  both sides. Accordingly, "[t]here is likewise every reason to conclude that settlement

22  negotiations were vigorously conducted at arms' length and without any suggestion of undue

23  influence." <u>In re Wash. Public Power Supply System Sec. Litig.</u>, 720 F. Supp. 1379, 1392 (D.

24  Ariz. 1989).

25         **2.**     **The Settlement Has No "Obvious Deficiencies" and Falls Within**

26                **the Range for Approval**

27       The proposed Settlement herein has no "obvious deficiencies" and is well within the

28  range of possible approval. All Settlement Class Members will receive an opportunity to

1 participate in and receive payment.

2         Class Counsel prepared calculations as to the potential value of the claims asserted.

3 Decl. Blumenthal at ¶6.  The Declaration of Norman Blumenthal, at ¶ 6, estimates that Dunbar

4 was subject to total maximum damages, in the amount of approximately $4,900,000, assuming

5 these claims and damages could be proven at trial.  Dunbar contended that any potential liability

6 was far lower, and that Dunbar's defenses would negate any recovery altogether.  Using the

7 estimates presented by Class Counsel, the settlement of $1,500,000, before deductions,

8 represents at least 30% of the total maximum liability estimated by Class Counsel, assuming

9 these amounts could be proven at trial.  Clearly the goal of this litigation has been met.  Decl.

10 Blumenthal, ¶ 6.

11         In <u>Glass v. UBS Fin. Servs.</u>, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007)

12 the federal district court for the Northern District of California recently approved a settlement

13 of an action claiming  unpaid overtime wages where the settlement amount constituted

14 approximately 25% to 35% of the estimated actual loss to the class.   Here the settlement

15 consideration constitutes a reasonable percentage of the estimated actual overtime loss to the

16 class.[2]

17         In <u>Glass</u>, the federal court ruled that the settlement which represented approximately 25

18 to 35% of the loss to the class was fair, reasonable, and adequate.   <u>Id.</u> at 28.  A fortiori, this

19 settlement is most certainly entitled to preliminary approval.

20         Where  both  sides  face  significant  uncertainty,  the  attendant  risks  favor  settlement.

21 <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th Cir. 1998).  Here, a number of defenses

22 asserted by Dunbar present serious threats to the claims of Plaintiffs and the other Class

23

24 _____

25         [2]     In <u>Glass</u>, the federal court granted preliminary approval of the settlement although the parties
failed to submit evidence verifying their estimate of the total loss to the class.  At the final fairness
26 hearing, the parties presented a lengthy discussion of the above-referenced estimate, in which they
represented that their estimate of the maximum loss to the class was based on hard data obtained from
27 interviews with class members, computer log-in records, and payroll records.  <u>Id.</u> at *28-*29.  The
parties estimate of the total loss to the Settlement Class here is based on the same type of hard data that
28 was not submitted in <u>Glass</u> until final settlement approval was sought.

1  Members.

2       For example, Dunbar contended that Dunbar had guns available for the Class members

3  to check out and that Dunbar reimbursed a portion of the bulletproof vest expense, up to $300.

4  In addition, Dunbar argued that Class members signed an "On Duty Meal Acknowledgment"

5  because the nature of the work precluded off duty meals, and therefore the meal period claims

6  were barred.  Finally, Dunbar claimed that not only were rest periods provided, but Dunbar

7  insures they are taken by having employees sign a "Daily Manifest Log." If successful,

8  Dunbar's defenses could eliminate or substantially reduce any recovery to the Class.  While

9  Plaintiffs believe that these defenses could be overcome, Defendant maintains these defenses

10 have merit and therefore present a serious risk to recovery by the Class.  Decl. Blumenthal, ¶¶

11 24-25.

12      There was also a significant risk that, if the Actions were not settled, Plaintiffs would be

13 unable to obtain class certification and thereby not recover on behalf of any Dunbar employees

14 other than themselves.  Dunbar argued that the individual experience of each employee varied

15 with respect to the meal periods, the rest periods and the expenses incurred.  Dunbar contends

16 that the meal and rest period claim would not be certified for reasons similar to those in Brinker

17 Restaurant Corp. v. Superior Court, Case No. S166350, which is currently under review by the

18 Supreme Court.  Finally, Dunbar argued that the proof of injury would require individualized

19 evidence which would preclude class certification.  See Ali v. U.S.A. Cab, Ltd., 176 Cal. App.

20 4th 1333, 1350 (2009).  While other cases have approved class certification in wage and hour

21 claims, class certification in this action would have been hotly disputed and was by no means

22 a foregone conclusion, and this uncertainty is especially true with respect to the largest valued

23 claim for missed meal and rest breaks.

24      After vigorous negotiations, the mediator presented the parties with a mediator's

25 proposal of $1,500,000.  Recognizing the potential risks, both sides agreed.  As the federal court

26 recently held in Glass, where the parties faced uncertainties similar to those here:

27       In light of the above-referenced uncertainty in the law, the risk, expense,
         complexity, and likely duration of further litigation likewise favors the settlement.
28       Regardless of how this Court might have ruled on the merits of the legal issues,

the losing party likely would have appealed, and the parties would have faced the expense and uncertainty of litigating an appeal. "The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." See In re Mego Financial Corp. Securities Litigation, 213 F.3d 454, 458 (9th Cir. 2000).

Here, the risk of further litigation is substantial.

### 3.    The Settlement Does Not Improperly Grant Preferential Treatment To The Class Representative or Segments Of The Class

The relief provided in the settlement will benefit all Class Members equally.  The settlement does not improperly grant preferential treatment to the Class Representative or any individual segments of the Class.

Each Settlement Class member, including the Plaintiffs, will be entitled to payment based on the plan of allocation.  Decl. Blumenthal at ¶6.  Each Settlement Class Member's Individual Settlement Award will be determined as follows:

Settlement awards to Class Members will be determined on a workweek basis and the amount to be paid per workweek shall be calculated by dividing the total number of workweeks worked by all of the respective Class Members during the Class Period into the Net Settlement Fund pursuant to the settlement allocation described below to yield the estimated minimum payment to be paid to the Class Members for each workweek. The number of workweeks worked by Class Members during the respective Class Period will be determined by reference to Defendant's records.  (Stipulation of Settlement at ¶17(c).)

The Claims Administrator will calculate the number of workweeks worked by the Class Members during the Class Period, the amount to be paid per workweek, and the individual settlement awards to those Class Members who submit valid and timely Claim Forms ("Participating Class Members").  (Id.)  The workweeks will be calculated by the Claims Administrator for each Class Member by dividing the total days worked as a Class Member during the Class Period by five. Partial workweeks will be counted. Defendant's workweek data will be presumed to be correct, unless a particular Class Member proves otherwise to the Claims Administrator by credible evidence. All workweek disputes will be resolved and decided by the Claims Administrator.  (Id.)  Decl. Blumenthal at ¶16.

The individual settlement awards will be determined by dividing the total number of workweeks for the entire Class by the Net Settlement Fund, resulting in the Workweek Value; and then multiplying the Workweek Value by the number of workweeks worked by each Class Member during the Class Period (The "Individual Settlement Award.") (Stipulation of Settlement at ¶17(c)(i). In the event that less than fifty (50) percent of the Net Settlement Fund is claimed by Participating Class Members, Defendant has guaranteed payment of fifty (50) percent of the Net Settlement Fund to be paid to the Participating Class Members on a proportional basis, on the number of work weeks he or she worked during the Class Period in relation to the number of weeks worked by all Participating Class Members during the Class Period. (Id.) For each Participating Class Member who submits a timely and valid claim form, the Claims Administrator mail to the address on file with the Claims Administrator, his or her Individual Settlement Award. (Id.)

In addition, the Class Representatives will apply to the trial court for a service award of $5,000 each. In Glass, the district court recently awarded each of the class representatives in an overtime wages class action a service award of $25,000. Glass, 2007 U.S. Dist. LEXIS 8476 at *51-52. The payment of service payment in this amount to the named plaintiff in a wage and hour class action is approved by settled authority, and the requested service payment in the amount of $5,000 each is reasonable in this case in light of the amount approved in Glass and other decisions.

### 4. The Stage Of The Proceedings Is Sufficiently Advanced To Permit Preliminary Approval Of The Settlement

The stage of the proceedings at which this settlement was reached also militates in favor of preliminary approval and ultimately, final approval of the settlement. Class Counsel has conducted a thorough investigation into the facts of the class action. Class Counsel began investigating the Class Members' claims before this action was filed. Class Counsel also obtained production of extensive employment and payroll records produced through informal discovery. Class Counsel engaged in an extensive review and analysis of the relevant documents and data with the assistance of experts. Accordingly, the agreement to settle did not

1  occur until Class Counsel possessed sufficient information to make an informed judgment

2  regarding the likelihood of success on the merits and the results that could be obtained through

3  further litigation.

4      Based on the foregoing data and their own independent investigation and evaluation,

5  Class Counsel is of the opinion that the settlement with Dunbar for the consideration and on the

6  terms set forth in this Stipulation of Settlement is fair, reasonable, and adequate and is in the

7  best interest of the class in light of all known facts and circumstances, including the risk of

8  significant delay, defenses asserted by ved, and numerous potential appellate issues.  Dunbar

9  and Dunbar's counsel also agree that the Settlement is fair and in the best interest of the

10  Settlement Class Members.  There can be no doubt that Counsel for both parties possessed

11  sufficient information to make an informed judgment regarding the likelihood of success on the

12  merits and the results that could be obtained through further litigation.  Decl. Blumenthal ¶ 26-

13  28.

14      In <u>Glass</u>, the Northern District of California recently granted final approval of an

15  overtime and meal wage action although in <u>Glass</u> no formal discovery had been conducted prior

16  to the settlement:

17      Here, no formal discovery took place prior to settlement. As the Ninth Circuit has
        observed, however, "[i]n the context of class action settlements, 'formal discovery
18      is not a necessary ticket to the bargaining table' where the parties have sufficient
        information to make an informed decision about settlement." See <u>In re Mego</u>
19      <u>Financial Corp. Securities Litigation</u>, 213 F.3d at 459.

20  2007 U.S. Dist. LEXIS 8476 at *14.

21      Here, Class Counsel was in an equally sufficient position to evaluate the fairness of this

22  settlement as in <u>Glass</u> because they conducted informal discovery as well as independent

23  investigations and due diligence to confirm the accuracy of the information supplied by Dunbar.

24

25  **VI.    THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES**

26      The proposed settlements meet all of the requirements for class certification under

27  F.R.C.P. §23(b)(2) as demonstrated below, and therefore, the Court may appropriately approve

28  the Settlement Class as defined in the Stipulation of Settlement.   This Court should

---

1  conditionally certify a class for settlement purposes only that consists of "all current and former

2  employees employed by Defendant as a driver/guard and/or crew chief or similar job title in

3  California between September 26, 2006, through the earlier of the date of preliminary Court

4  approval or December 31, 2010." (Stipulation of Settlement at ¶6).

5  **A.    Rule 23 of the Federal Rules of Civil Procedure Governs**

6  Plaintiffs seek certification of this Action for settlement purposes under F.R.C.P

7  §23(b)(3).  This portion of rule 23 applies to class actions where "the court finds that the

8  questions of law or fact common to the members of the class predominate over any questions

9  affecting only individual members, and that a class action is superior to other available methods

10 for the fair and efficient adjudication of the controversy."  Fed.R.Civ.P. 23(b)(3).

11 To maintain a class action under rule 23(b)(3), the four prerequisites of F.R.C.P. Rule

12 23(a) must first be satisfied.  These prerequisites are referred to as numerosity, commonality,

13 typicality, and adequacy of representation, and are set forth in Rule 23(a) as follows:

14 (1)    the class is so numerous that joinder of all members is impracticable,

15 (2)    there are questions of law or fact common to the class,

16 (3)    the claims or defenses of the representative parties are typical of the claims or defenses

17        of the class, and

18 (4)    the representative parties will fairly and adequately protect the interests of the class.

19 While Dunbar disputes that the Plaintiffs can satisfy any of these requirements, the Parties agree

20 that, for purposes of settlement, these requirements may be satisfied in this case, and therefore,

21 the proposed Settlement Class should be certified for purposes of settlement.

22 **B.    The Numerosity Requirement Is Satisfied**

23 Rule 23(a) merely requires that the class be "so numerous that joinder of all members is

24 impracticable."  F.R.C.P. §23(a).  "Courts have routinely found the numerosity requirement

25 satisfied when the class comprises 40 or more members."  EEOC v. Kovacevich "5" Farms,

26 2007 U.S. Dist. LEXIS 32330 at *57 (E.D.Cal. April 18, 2007); see also Slaven v. BP Am., Inc.,

27 190 F.R.D. 649, 654 (C.D. Cal. 2000); Ansari v. New York Univ., 179 F.R.D. 112, 114

28 (S.D.N.Y. 1998); Lockwood Motors, Inc. v. General Motors Corp., 162 F.R.D. 569, 574 (D.

1    Minn. 1995).  In <u>Consolidated Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir.

2    1995), the Court held that "numerosity is presumed at a level of 40 members."  The Ninth

3    Circuit observed that classes with fewer than 70 members have been certified in numerous

4    cases. <u>Jordan v. County of Los Angeles</u>, 669 F.2d 1311, 1320 n.10 (9th Cir. 1982), vacated on

5    other grounds, 459 U.S. 810, 103 S. Ct. 35, 74 L. Ed. 2d 48 (1982) (noting that classes with

6    fewer than 70 members have been certified in numerous cases).

7        Here, the Settlement Class is composed of more than 785 Settlement Class Members,

8    which is sufficiently numerous.  Decl. Blumenthal, ¶291.

9        **C.    Common Questions of Law and Fact Bind the Class**

10       Rule 23(a) requires that there be a common question of law or fact.  There is no

11   requirement that the members of the class be identically situated, only that there exists one or

12   more factual or legal questions common to all members.  <u>Jenson v. Continental Fin. Corp.</u>, 404

13   F. Supp. 806 (D. Minn. 1975).  This threshold of "commonality" is not particularly high.

14   <u>Jenkins v. Raymark Ind.</u>, Inc., 782 F.2d 468, 472 (5th Cir. 1986).  The fundamental question

15   is whether the resolution of the common legal or factual questions would affect all or a

16   substantial number of the class members.  <u>Jenkins</u>, <u>supra</u>, 782 F.2d at 472.  Indeed, if a claim

17   "arises out of the same legal or remedial theory, the presence of factual variations is normally

18   not sufficient to preclude class action treatment."  <u>Donaldson v. Pillsbury Co.</u>, 554 F.2d 825,

19   831 (8th Cir. 1977), cert. denied, 434 U.S. 856 (1977).

20       Rule 23(a) is satisfied where "the course or conduct giving rise to the cause of action

21   affects all class members, and at least one of the elements of that cause of action is shared by

22   all of the class members."  <u>Lockwood Motors</u>, 162 F.R.D. at 575.  This requirement is met if

23   common questions of liability are present, even if there may be individual variations.  <u>In re</u>

24   <u>Workers' Compensation</u>, 130 F.R.D. 99, 104 (D. Minn. 1990).

25       Here, common questions of law and fact, as alleged by the Plaintiffs, are present,

26   specifically the question of (i) whether or not Defendant failed to reimburse the Settlement

27   Class for all reasonable business expenses in violation of California Labor Code section 2802;

28   (ii) whether or not Defendant violated the Private Attorneys General Act (Labor Code Section

1   2699, et seq.), Unfair Competition Law (Business and Professions Code Section 17200, et seq.),

2   under Labor Code sections 201, 203, 221, 226.7, 512, and 2802, and Wage Order No. 9 as to

3   the Settlement Class; and (iii) whether or not Defendant failed to provide meal and rest periods

4   to the Settlement Class in violation of California Labor Code sections 226.7 and 512 and IWC

5   Wage Order 9.  Decl. Blumenthal, ¶29.  Dunbar does dispute that commonality actually exists,

6   but will not oppose such a finding for purposes of this settlement only.

**D.      The Claims of the Plaintiffs Are Typical of the Class Claims**

8        The typicality requirement of Rule 23(a) requires that the members of the class have the

9   same or similar claims as the named plaintiff.  "The typicality requirement is met when the

10   claims of the named plaintiff arise from the same event or are based on the same legal theories."

11   Tate v. Weyerhaeuser Co., 723 F.2d 598, 608 (8th Cir. 1983).  In Hanlon v. Chrysler Co., 150

12   F.3d 1011 (9th Cir. 1998), the Ninth Circuit held that "[u]nder the rule's permissive standards,

13   representative claims are 'typical' if they are reasonably coextensive with those of absent class

14   members; they need not be substantially identical."  50 F.3d at 1020.  Typicality "does not mean

15   that the claims of the class representative[s] must be identical or substantially identical to those

16   of the absent class members."  Stanton, supra, at 957.

17       In the instant case, there can be little doubt that the typicality requirement is fully

18   satisfied.  The Plaintiffs, like every other member of the Class, were employed by Dunbar and

19   were subjected to the standardized practices of Dunbar which are alleged to failed to provide

20   business expense reimbursement and meal and rest periods.  The Plaintiffs, like every other

21   member of the Class, claim compensation for missed meal periods and for business expense

22   reimbursement.  Thus, the claims of both the Plaintiffs and the members of the Class arise from

23   the same course of conduct by Dunbar, involve the same issues, and are based on the same legal

24   theories.  Decl. Blumenthal, ¶ 29.  The typicality requirement of Rule 23 is met as to the

25   common issues presented in this case.  While Dunbar disputes that Plaintiffs have claims typical

26   of the individuals they purport to represent, Dunbar will not oppose a finding of typicality for

27   purposes of this settlement only.

28   **E.      The Class Representatives Have Fairly and Adequately Protected the**

1

**Interests of the Class**

2     The Class Representatives provided adequate representation of the interests of the class

3  in that: (a) their attorneys are competent, experienced in class litigation and generally able to

4  conduct the proposed litigation; and (b) the Class Representatives do not have interests

5  antagonistic to those of the class.  <u>White v. Local 942</u>, 688 F.2d 85, (9th Cir. 1982).  Simply put,

6  Rule 23 asks whether the Class Representative will vigorously prosecute on behalf of the class

7  and have a basic understanding of the claims.  This requirement has been met here.  First,

8  Plaintiffs are well aware of their duties as representatives of the class and have actively

9  participated in the prosecution of this case to date.  They effectively communicated with Class

10 Counsel, providing documents to Class Counsel and participated extensively in discovery and

11 investigation of the action.  The personal involvement of the Plaintiffs was essential to the

12 prosecution of the action and the success of the mediation.  Decl. Blumenthal, ¶29.  Second, the

13 Plaintiffs retained competent counsel who have extensive experience in consumer class actions.

14 See Decl. Blumenthal at ¶30; Declaration of Isam Khoury  at ¶5.  Class Counsel has extensive

15 experience in class action litigation in California and throughout the country.  Class Counsel

16 has been involved as class counsel in over two hundred (200) class action matters, including

17 many wage and hour class actions.  See, e.g., Resume, attached as <u>Exhibit 2</u> to the Decl.

18 Blumenthal; and Resume, attached as Exhibit 1 to the Declaration of Khoury.  Third, there is

19 no antagonism between the interests of the Plaintiffs and those of the Class.  Both the Plaintiffs

20 and the Settlement Class Members seek monetary relief under the same set of facts and legal

21 theories.  Under such circumstances, there can be no conflicts of interest, and adequacy of

22 representation is presumed.  <u>In re Wirebound Boxes Antitrust Lit.</u>, 128 F.R.D. 268 (D. Minn.

23 1989).  While Dunbar disputes that the Plaintiffs are adequate class representatives, Dunbar

24 does not oppose such a finding for purposes of this settlement only.

25

26 **F.     For the Class As Alleged in the First Amended Complaint, The Additional
           Requirements of Rule 23 Are Satisfied**

27     Since the requirements of Rule 23(a) have been satisfied, the Court now must look to

28 Rule 23(b)(3) in order to determine whether a class should be maintained under one of the listed

categories.  Under Rule 23(b)(3), a class action may be maintained if two basic conditions are met.  First, common questions must predominate over individual issues, and second, the class action must be superior to other available other methods for the fair and efficient adjudication of the controversy.

### 1.      The Predominance Requirement Is Met

Rule 23(b)(3) provides that a class may be maintained if "the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members."  There is no bright line to determine whether common issues predominate.  A claim will meet the predominance requirement in cases where generalized evidence of the Defendant's conduct will prove or disprove an element of the claim on a simultaneous class-wide basis.  The "fundamental question" is whether the claim asserted is seeking a remedy to a "common legal grievance."  Lockwood Motors, 162 F.R.D. at 580; Buchholtz v. Swift & Co., 62 F.R.D. 581, 598 (D.Minn. 1973).  Further, the mere fact that there are certain issues that may need to be determined on an individual basis does not preclude the satisfaction of the predominance requirement.  See Newberg & Comte, Newberg on Class Actions §4.25 (3d ed. 1992).

Here, the adjudication of the common issues surrounding Dunbar uniform and systematic acts could establish Dunbar's liability on a class-wide basis.  Plaintiffs contends that Dunbar had engaged in a uniform course of conduct with respect to business expense reimbursement and meal periods which resulted in a systematic failure to provide compensation for incurred business expenses and missed meal and rest periods and that Dunbar's policies with respect to these issues are uniform.  The only question is whether Dunbar's conduct supports a meritorious claim for liability.  Such suits challenging the legality of a standardized course of conduct are generally appropriate for resolution by means of a class action.  Accordingly, Plaintiffs would argue that the common issues of law and fact present in this case predominate.

In the context of wage and hour litigation, courts have often found that common issues predominate where an employer treats the putative class members uniformly, even where the party opposing class certification presents evidence of individualized variations.  See e.g.

1    Ghazaryan v. Diva Limousine, Ltd., 169 Cal. App. 4th 1524, 1538 (2008) (wage and hour

2    claims   "routinely proceed as class actions"); Prince v. CLS Transportation, Inc., 118

3    Cal.App.4th 1320, 1329 (2004); Estrada v. FedEx Ground Package System, Inc., 154

4    Cal.App.4th 1, 14 (2007) (holding that the   determination of "which expenses would be

5    reimbursable" under Labor Code § 2802 is appropriate for class-wide resolution).

6          While Dunbar disputes that the predominance requirement may be satisfied, it will not

7    oppose such a finding for purposes of this settlement only.

8                    **2.    The Superiority Requirement Is Met**

9          To certify a class, the Court must also determine "that a class action is superior to other

10   available methods for the fair and efficient adjudication of the controversy."  F.R.C.P. Rule 23

11   (b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote

12   greater efficiency, a class action may be superior to other methods of litigation." Valentino v.

13   Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

14         "If the plaintiffs' claims are substantiated, a question as to which the court presently has

15   no opinion, the class action mechanism is clearly the most efficient means of resolving the many

16   claims which may be asserted.  If the case were not handled as a class, thousands of small

17   claims would either be brought or unjustly abandoned.  The first possibility would be a flood

18   of cases, the second would involve individual claims abandoned because of cost."   In re

19   Workers' Compensation., 130 F.R.D. at 110.

20         Here, a class action is the superior mechanism for adjudication of the claims as pled by

21   the Plaintiffs.  While Dunbar disputes that the superiority requirement may be satisfied, it will

22   not oppose such a finding for purposes of this settlement only.

23

24   **VII.    THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE**

25         The Parties have agreed upon procedures by which the Settlement Class will be provided

26   with written notice of the Settlement similar to that approved and utilized in hundreds of class

27   action settlements.  The Parties have jointly drafted a Notice of Preliminary Approval of the

28   Settlement, attached to the Stipulation of Settlement as Exhibit A and is hereby submitted to this

1   Court for approval.

2       The Notice, drafted jointly and agreed upon by the Parties through their respective

3   counsel,  includes information regarding the nature of the Litigation; a summary of the

4   substance of the Settlement, including Dunbar's denial of liability; the definition of the

5   Settlement Class; the procedure and time period for objecting to the Settlement, exclusion from

6   the Settlement and participating in the Settlement; a statement that the District Court has

7   preliminarily approved the Settlement; and information regarding the claims filing procedure

8   and the opt-out procedure.  See Exhibit A to the Stipulation of Settlement.  Attached to the

9   Notice will be a Claim Form in the forms attached to the Stipulation of Settlement as Exhibit

10  B.

11      The Notice shall state that Class Members who wish to participate in the settlement shall

12  complete and return the Claim Form pursuant to the instructions contained therein by first class

13  mail or equivalent, postage paid.  The Notice shall also provide that any Class Member may

14  choose to opt out of the Class, and that any such person who chooses to opt out of the Class will

15  not be entitled to any recovery obtained by way of the settlement and will not be bound by the

16  settlement or have any right to object, appeal or comment thereon.

17      The Notice will provide that all objections to the Settlement by anyone, including

18  members of the Settlement Class, must be filed in the District Court and served upon all counsel

19  of record by no later than forty-five (45) days from the mailing of the Notice of Preliminary

20  Approval.  The deadline applies notwithstanding any argument regarding non-receipt of the

21  notice.  All objections must state with particularity the basis on which they are asserted.  In

22  accordance with Mercury Interactive Corp. Secs. Litig. v. Mercury Interactive Corp., 618 F.3d

23  988 (9th Cir 2010), the application for attorneys' fees and costs will be filed before  the notice

24  is distributed to the Settlement Class, and the notice will direct Settlement Class Members to

25  where they may view the application for attorneys' fees and costs.  Thus, all Settlement Class

26  Members will have ample opportunity to review and comment on the attorneys' fees and costs

27  before the objection deadline.  The attorneys' fees and costs will be heard in conjunction with

28  the motion for final approval on the Final Approval Hearing date as set by this Court in the

1   Preliminary Approval Order.  (Decl. Blumenthal at ¶31).

2       The notice also informs members of the Settlement Class about the release.  Specifically,

3   the notice explains that unless they exclude themselves, upon final approval they will release

4   any and all claims asserted in the Consolidated Class Action, and including all claims that could

5   be asserted based on the facts alleged in the Complaint, against the Released Parties.  (Decl.

6   Blumenthal at ¶32).

7       This notice program was designed to meaningfully reach the largest possible number of

8   potential Settlement Class Members.  Before mailing, the Claims Administrator will process the

9   class list through the United States Postal Service's National Change of Address database

10  ("NCOA") and perform address searches.  If Notice forms are returned because of incorrect

11  addresses, the Claims Administrator shall conduct a Social Security number search for more

12  current addresses for Settlement Class Members and re-mail the Notice forms to any new

13  addresses obtained.  (Stipulation of Settlement at ¶ 20).  The mailing and distribution of the

14  Notice satisfies the requirements of due process, and is the best notice practicable under the

15  circumstances and constitutes due and sufficient notice to all persons entitled thereto.

16      This notice satisfies the content requirements for notice following the exemplar class

17  notice in the Manual for Complex Litigation, Second §41.43.  This notice also fulfills the

18  requirement that Class notices be neutral. Newberg, at §8.39.

19

20  **VIII.    CONCLUSION**

21      Counsel for the Parties have committed substantial amounts of time, energy, and

22  resources litigating and ultimately settling this case.  In the judgment of Plaintiffs and Class

23  Counsel, the proposed settlement is a fair and reasonable compromise of the issues in dispute

24  in light of the strengths and weaknesses of each party's case.  After weighing the substantial,

25  certain and immediate benefits of these settlements against the uncertainty of trial, and appeal,

26  Plaintiffs believe the proposed settlement is fair, reasonable and adequate, and warrants this

27  Court's preliminary approval.

28      Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the

proposed settlements, certify the Class for settlement purposes, schedule a date for a hearing on Final Approval, and sign the proposed Preliminary Approval Order submitted herewith.

Dated: March 3, 2011                    **BLUMENTHAL, NORDREHAUG & BHOWMIK**

                                         By:___*/s/ Norman B. Blumenthal*_____
                                              Norman B. Blumenthal
                                              Attorneys for Plaintiff Dirienzo

Dated: March 3, 2011                    **COHELAN KHOURY & SINGER**

                                         By:___*/s/ Diana Khoury*_____
                                              Diana Koury
                                              Attorneys for Plaintiff Rogers

Dated: March 3, 2011                    **JACKSON LEWIS LLP**

                                         By:___*/s/ Paul F. Sorrentino*_____
                                              Paul F. Sorrentino
                                              Attorneys for Defendant

## SIGNATURE CERTIFICATION

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Paul Sorrentino, counsel for Defendant, and Diana Koury, attorney for Plaintiff Rogers, and that I have obtained their authorization to affix his/her electronic signature to this document.

Dated: March 3, 2011                          **BLUMENTHAL, NORDREHAUG & BHOWMIK**

                                              By:   */s/ Norman B. Blumenthal*
                                                    Norman B. Blumenthal
                                                    Attorneys for Plaintiff Dirienzo

K:\D\NBB\Dirienzo v. Dunbar Armored\Preliminary Approval\p-Memorandum for joint motion-FINAL.wpd